UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TYRONE TITUS PRICE,

      Petitioner,                          Case No. 12-13399

v.

                                          HON. AVERN COHN

TOM BIRKETT,

      Respondent.

_____/

**MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Tyrone Titus Price,

(Petitioner), is currently on parole supervision with the Michigan Department of

Corrections through the Saginaw Parole Office in Saginaw, Michigan.  Petitioner has

filed a *pro se* habeas petition, in which he challenges his convictions for carrying a

concealed weapon, Mich. Comp. Laws § 750.227; felon in possession of a firearm,

Mich. Comp. Laws § 750.224f; and possession of a firearm in the commission of a

felony, Mich. Comp. Laws § 750.227b.  Respondent, through the Attorney General's

Office, filed a response, arguing that the claims lack merit.  For the reasons which

follow, the petition will be denied.

### II.  Procedural History

Petitioner was convicted of the above offenses following a jury trial in the

Saginaw County Circuit Court.

Petitioner filed an application for leave to appeal with the Michigan Court of

Appeals, in which he was represented by the State Appellate Defender Office. Petitioner's appellate counsel raised the three claims presented in his current petition. The Michigan Court of Appeals denied petitioner leave to appeal "for lack of merit in the grounds presented." *People v. Price,* No. 301584 (Mich.Ct.App. June 15, 2011). Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, again raising the same claims.  The Michigan Supreme Court denied petitioner leave to appeal. *People v. Price,* 490 Mich. 912 (2011).

Petitioner has now filed a petition for writ of habeas corpus, on the following grounds:

> I. The prosecution failed to prove beyond a reasonable doubt the "concealment" element of carrying a concealed weapon, where none of the witnesses were in a position to make an "ordinary observation" of Mr. Price.
>
> II. Petitioner Price is entitled to a new trial where defense counsel provided constitutionally ineffective assistance of counsel by failing to request a jury instruction based on missing evidence.
>
> III. At a minimum, this Court should remand for the ministerial task of correcting Petitioner Price's sentencing information report to reflect a 10-point score under PRV-7.

### III.  Background

The material facts leading to petitioner's conviction are gleaned from the trial court record as follows.

Just past midnight, on February 22, 2009, Saginaw Police Officer Erik Skabardis and other police officers were dispatched to a street in Saginaw, Michigan regarding a fight involving a large group of people.  While the police were en route, the dispatcher informed them that there were reports of shots being fired.  Officer Skabardis was a member of a plainclothes unit and was not in uniform.  When Officer Skabardis arrived

2

at the location, uniformed officers went to talk to the persons who were in front of a house. Officer Skabardis followed two sets of footprints that had been placed in the freshly fallen snow on the ground. These footprints led around to the back of the house. When Officer Skabardis came to the back of the house, he saw two individuals standing about sixty feet away. Officer Skabardis identified himself as a police officer and asked these individuals to come over to him. One of the individuals stayed put. The other person, later identified as Petitioner, took off running away. Petitioner ran through the back yards of several neighboring houses, with Skabardis following after him. Petitioner ran behind a Chevrolet Trailblazer parked in a driveway. When he came out from behind the vehicle, Petitioner fell down in the snow, at which point, Officer Skabardis jumped on top of Petitioner, handcuffed him, and took him into custody. At the time of his arrest, Petitioner was wearing a dark hooded sweatshirt and dark sweat pants.

After Petitioner was placed into custody, Officer Skabardis backtracked, following Petitioner's footprints in the snow. Petitioner's tracks were the only set of tracks that went between the house and a vehicle, a Chevrolet Trailblazer, near where Petitioner had been hiding. Between the Trailblazer and the house, Skabardis discovered a board missing at the base of the porch and that the snow by the porch had been moved. Officer Skabardis searched underneath the porch and found a .38 revolver. The revolver was not covered in fresh snow, but instead had liquid water on it, which lead Officer Skabardis to surmise that it had recently been somewhere warm, because the temperature outside was below freezing (21 degrees). The .38 revolver was loaded with five live rounds and one empty chamber. Three of the rounds were Federal .38 Specials and two were Winchester .38 Specials.

3

Before Petitioner was placed in a police car for transport, he was patted down for weapons.  Nothing was found.  While being transported to the jail, Petitioner "was fidgeting around" as though he was attempting to remove something from the back of his pants or shirt or perhaps his underwear.  Petitioner claimed that he was moving around because the handcuffs were uncomfortable, although moving around in the cuffs would actually tighten them further and make them even less comfortable.

After Petitioner was removed from the police car at the jail, Officer Dennis Howe, the transporting officer, searched the backseat of his patrol car and found four bullets underneath the backseat.  Officer Howe had searched his car before his shift had started and knew that the bullets were not there before Petitioner had been transported in his vehicle.  Petitioner had been the only prisoner transported in Officer Howe's car that night.  Three of the bullets were in a plastic bag, while the fourth had fallen out of a rip in the bag.  All four bullets were Federal .38 Specials.

## IV.  Analysis

### A.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is

5

possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Indeed, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

Here, the AEDPA deferential standard of review applies to Petitioner's case where the Michigan Court of Appeals rejected petitioner's appeal "for lack of merit in the grounds presented" and the Michigan Supreme Court subsequently denied leave to appeal in a standard form order, because these orders amounted to a decision on the merits. *See Werth v. Bell,* 692 F. 3d 486, 492-94 (6th Cir. 2012); *Hardaway v.*

6

*Robinson*, 655 F.3d 445, 447, 449, n. 1 (6th Cir. 2011).

### B. Petitioner's Claims

### 1. Sufficiency of the Evidence

Petitioner first contends that there was insufficient evidence to establish that he had concealed a weapon to sustain his conviction for carrying a concealed weapon. Petitioner says because none of the witnesses were in a position to make an "ordinary observation" of him to determine whether he had actually concealed the firearm.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).  Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt.  *See Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted).

More importantly, a federal court may not overturn a state court decision that

7

rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard.  *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

The elements of carrying a concealed weapon are:

1.  that the defendant carried a weapon; and,
2. that the weapon was concealed on or about the defendant's person.

*People v. Davenport,* 89 Mich. App. 678, 682; 282 N.W. 2d 179 (1979).

Concealment is considered an essential element of the offense of carrying a concealed weapon. *See People v. Jackson,* 43 Mich. App. 569, 571; 204 N.W. 2d 367 (1972).  "Absolute invisibility of a weapon is not indispensable to concealment; the weapon need not be totally concealed." *People v. Kincade*, 61 Mich. App. 498, 502; 233 N.W. 2d 54 (1975).  Under Michigan law, a weapon is considered concealed, "when it is not discernible by the ordinary observation of persons coming in contact with the person carrying it, casually observing him, as people do in the ordinary and usual associations of life." *Id.* (quoting *People v. Jones*, 12 Mich. App. 293, 296; 162 N.W. 2d 847 (1968)).  Moreover, in a prosecution for carrying a concealed weapon, the fact

8

that the weapon may have been in plain view at one point in time does not negate, as a matter of law, a finding that under any particular set of circumstances there had been the necessary concealment. *See People v. Charron*, 54 Mich. App. 26, 30; 220 N.W.2d 216 (1974).  Whether a concealment has been established by the evidence presented in a criminal prosecution is ordinarily a question for the jury. *Kincade,* 61 Mich. App. at 504.

Here, there was sufficient circumstantial evidence for a rational trier of fact to conclude beyond a reasonable doubt that petitioner had at some point concealed the revolver that was recovered by the police.  Petitioner was wearing only a hooded sweat shirt and sweat pants at the time that Officer Skabardis encountered him and subsequently arrested him.  Petitioner did not have a holster in his possession or any other means of holding a gun on his person out in the open, other than possibly in his hands.  Officer Skabardkis did not observe Petitioner holding a gun in his hands or anywhere out in the open.  In light of the fact that the police had received a dispatch for "shots fired," it would be reasonable for the jurors to infer that Officer Skabardkis would have been in a heightened state of alertness for any person in the area who was armed with a firearm and would have noticed any person openly carrying such a weapon.  Officer Skabardkis' failure to see a gun in Petitioner's hands or anywhere out in the open is strong circumstantial evidence that Petitioner had concealed the weapon. In light of the clothing that Petitioner had been wearing and the lack of a holster, the only reasonable inference was that Petitioner had only concealed locations for him to carry this gun.  The evidence presented thus allowed the jurors to reasonably infer that petitioner had, at least at some point, concealed the weapon.

A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos,* 132 S. Ct. at 6 (quoting *Jackson v. Virginia,* 443 U.S. at 326).  In light of the evidence in this case, the Court cannot say that the jury's verdict "was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. at 2065.  Petitioner is therefore not entitled to habeas relief on his first claim.

## 2.  Ineffective Assistance of Counsel

Petitioner next contends that he was deprived of the effective assistance of trial counsel.  To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a

10

demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473,

11

1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over three years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner claims that his trial counsel was ineffective for failing to request an adverse inference jury instruction based upon the prosecutor's failure to present to the jury the results of a fingerprint analysis that had been performed on the weapon. Petitioner argues that counsel should have requested CJI 2d 5.12, which states that a jury may infer that a missing prosecution witness' testimony would have been unfavorable to the prosecution's case. Similar instructions have been given when the police or prosecutor have failed to preserve evidence. *See e.g. People v. Hardaway*, 67 Mich. App. 82, 85; 240 N.W. 2d 276 (1976)(upholding the trial court's reading of an adverse inference instruction when the police erased a tape recording of a police radio

broadcast).

Petitioner is not entitled to habeas relief on this claim.  First, Petitioner has failed to establish that a fingerprint analysis had been performed on the weapon; Petitioner says only that Officer Hernandez had submitted the firearm to be tested for fingerprints. Moreover, assuming that a fingerprint test had been performed, Petitioner would still not be entitled to an adverse inference instruction because he has neither alleged, nor shown, that the withholding of any fingerprint analysis was done in bad faith by the police or the prosecutor.  *See People v. Cress,* 466 Mich. 883; 646 N.W. 2d 469 (2002) (Petitioner must show prosecutor acted in bad faith in failing to turn over the evidence). Therefore, trial counsel was not ineffective in failing to request such an instruction from the court.

Moreover, even if trial counsel was deficient in failing to request an adverse inference instruction, Petitioner is unable to establish that he was prejudiced by counsel's failure to request such an instruction.  As outlined above, there was compelling evidence that linked Petitioner to the weapon recovered by Officer Skabardis.  When Officer Skabardis asked to talk to petitioner, he took off running. Under Michigan law, flight is relevant to consciousness of guilt. *See Johnson v. Burke*, 903 F. 2d 1056, 1062 (6th Cir. 1990)(internal citations omitted).  In addition, Petitioner's footprints were the only footprints observed in the freshly fallen snow that lead past where the weapon was found.  The board underneath the porch where the weapon was found had been moved, as well as the snow around the porch.  The weapon was warm enough to have liquid water on it in sub-freezing temperatures, thus suggesting that it had recently been hidden under the porch.  Petitioner had .38 caliber ammunition

13

on his person that he tried to discard in the police car.  Overall, Petitioner has failed to show that the outcome of the case would have been different had counsel requested an adverse inference instruction, thus, he is not entitled to habeas relief on his ineffective assistance of counsel claim.

### 3.  Sentencing Guidelines

Petitioner lastly contends that Prior Record Variable 7 of the Michigan Sentencing Guidelines was improperly scored.  A claim that the trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is essentially a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *Thomas v. Foltz*, 654 F. Supp. 105, 107 (E.D. Mich. 1987). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009)(citing *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005)).  "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.*  As such, Petitioner is not entitled to habeas relief on this claim.

### V.  Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable

14

determination of the facts.  Accordingly, the petition is **DENIED.**

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore **DECLINES** to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). [1] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**SO ORDERED.**


 S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  April 10, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 10, 2013, by electronic and/or ordinary mail.

 S/Sakne Chami
Case Manager, (313) 234-5160

---

[1] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.